NANCY J. BREEDLOVE, APPELLANT, *v.* CHARLES BREEDLOVE AKA DAVID BERGER, RESPONDENT.

No. 15075

December 6, 1984                    691 P.2d 426

*Jones, Jones, Bell, Close & Brown*, Las Vegas, for Appellant.

*Eric Zubel, and Lance A. Landers*, Las Vegas, for Respondent.

## OPINION

By the Court, MANOUKIAN, C. J.:

The parties in this case had five children together during the course of their marriage, which ended by divorce in 1968. The

Indiana trial court which conducted the divorce proceedings awarded custody of all five children to appellant, and further ordered respondent to pay child support to appellant in the sum of $175 per week.

It is undisputed that respondent subsequently defaulted on his child support payments and, in 1980, appellant obtained a judgment from the Indiana trial court, awarding her approximately $90,000 in child support payment arrearages and $2,260 in attorney fees. Appellant duly recorded the judgment in the Clark County district court, and respondent, who is a resident of Clark County, was given notice of the judgment. Respondent, however, failed to pay any amount of the judgment, and appellant began a lengthy series of attempts to secure payment, with respondent in turn going to even greater lengths to avoid making payment. In one instance respondent, after being notified of the judgment against him, placed his major attachable asset, his home in Las Vegas, into a family trust. The trust, however, was later ordered set aside primarily because the district court found that it had been created for the sole purpose of defrauding appellant in her attempt to execute on the judgment.

Shortly after the trust was set aside, respondent filed a homestead exemption on his home pursuant to NRS 115.010,[1] again frustrating appellant in her attempt to execute on the judgment.[2] Appellant then moved in the district court to have the homestead exemption ruled inapplicable to her judgment against respondent, primarily contending that public policy requires an exception to the homestead laws in cases where a party is seeking to enforce a child support award against the homesteader. The district court, however, denied the motion, concluding that respondent could use the homestead exemption to prevent appellant from executing on his home. Appellant contends that the district court erred in this determination. We agree.

On its face, the homestead law in this state seems to indicate

---

[1]NRS 115.010 provides in pertinent part that:

    1. The homestead . . . is not subject to forced sale on execution, or any final process from any court, except as provided by subsection 2.

    2. The exemption provided in subsection 1 does not extend to process to enforce the payment of obligations contracted for the purchase of the premises, or for improvements made thereon, including any mechanic's lien lawfully obtained, or for legal taxes, or for:

    (a) Any mortgage or deed of trust thereon executed and given; or

    (b) Any lien to which prior consent has been given through the acceptance of property subject to any recorded declaration of restrictions, deed restriction, restrictive covenant or equitable servitude, by both husband and wife, when that relation exists. . . .

[2]The record reflects that the home is the only item of respondent's which is now left for appellant to execute on since, for reasons unknown, all attempts to execute on respondent's remaining properties have been unsuccessful.

that a homestead exemption is always enforceable against a party seeking to execute on the homestead, unless the party can demonstrate that he or she comes within one of the statutory exceptions. *See* NRS 115.010, *supra,* note 1; *see also* Nev. Const. art. 4, § 30. Applying the statute in a strictly technical fashion, it would appear that appellant does not come within one of the listed exceptions.[3] Nevertheless, we agree with appellant that to interpret the statute in such a highly technical fashion would in this case lead to absurd results, and would in fact contravene the legislature's clear intent in enacting this statute.

Homestead laws in this country were designed for the purpose of protecting families and making families secure in their homes from creditors they are unable to pay. *See, e.g.,* Bickel v. Bickel, 495 P.2d 154 (Ariz.Ct.App. 1972); Winter v. Winter, 145 N.W. 709 (Neb. 1914); *see generally* Annot., 54 A.L.R.2d 1422 (1957). As such, when an ex-wife or child attempts to enforce court-ordered support payments, the rationale behind upholding the homestead exemption can no longer be said to apply since the policy of protecting the family would no longer be served by such an application. *See* Bickel v. Bickel, *supra;* Winter v. Winter, *supra.* A former family member attempting to enforce a support judgment can hardly be said to be a creditor of the sort against which the legislature sought to protect the homesteader, and it would be extremely unfair to permit the homestead to be used as a shield under these circumstances to insulate a father from being forced to pay the support that is owed to his own children. *See* Bickel v. Bickel, *supra;* Winter v. Winter, *supra.*

Respondent nevertheless cites cases from other jurisdictions which have refused to find a public policy exception to their own homestead laws in cases involving enforcement of support benefits. *See* Yager v. Yager, 60 p.2d 422 (Cal. 1936); Putz v. Putz, 572 P.2d 970 (Okla. 1977). The courts in these cases reasoned that if a person owing child support payments remarried and created a new family and home, the second family had a right to be secure in the home, and that this right essentially overrode the right the first family had to seek enforcement of a support award. Respondent contends that since he is now living in the home with his second wife and her children from a former marriage, the

---

[3]Appellant did argue that her judgment against respondent should be treated as a "lien" on the home such as to bring it within the statutory exception listed in NRS 115.010(2)(b). *See supra,* note 1. We conclude, however, that even if we were to deem the judgment to be a lien, it would not be one to which respondent gave his prior consent and would therefore not fit within this particular exception.

public policies of Nevada would be served by applying the homestead laws to protect his second family.

We cannot agree with this reasoning. Respondent owed his first family a duty of support long before the second marriage arose, and he entered into the second marriage well aware of that duty. As the Nebraska Supreme Court stated:

> "The [homestead] law ought not to permit [the defendant-husband] to construct a shield that will protect him in his marital and domestic recklessness. By getting married again, he ought not to be permitted to relieve himself from the burden of supporting the child that he caused to come into the world."

Winter v. Winter, *supra,* at 712.

To permit the application of the homestead laws to protect respondent's second family, at the expense of depriving his first family of the support to which they are entitled, was clearly not a result intended by the Nevada Legislature in enacting the homestead laws.

We further note that respondent's argument is especially disingenuous in light of the particular facts of this case, and that the application of the *Yager* and *Putz* rationale would in this case lead to an absurd and unwarranted result. The record reflects that respondent is a Las Vegas medical doctor, and that he is by no means unable to pay the judgment in this case. We further note that respondent's home, estimated by respondent himself to be worth at least $160,000, was purchased *after* he had already defaulted on his child support payments. Clearly it cannot be said that the homestead laws were designed to protect an otherwise financially solvent former spouse, such as respondent, who has defaulted on his support payments to his own children, and who seeks to suffer absolutely no consequences as a result thereof.

In sum, respondent is not the type of debtor whom the legislature sought to protect, and appellant, in turn, is not the type of creditor from whom the legislature intended to protect homesteaders. *See* Bickel v. Bickel, *supra.*

Accordingly, the judgment is reversed, and the matter is remanded to the district court for further proceedings in accordance with this opinion.

MOWBRAY, STEFFEN and GUNDERSON, JJ., concur.

SPRINGER, J., dissenting:

I dissent because I agree with the trial judge, who took the position that any additional specific exceptions to the homestead exemption should be created by the legislature and not by the courts.

Nevada Revised Statutes Chapter 115 withdraws the homestead from the reach of creditors *except* where the debt relates to the purchase of the premises or to improvements made on the premises. This opinion creates a new exception, namely, indebtedness arising out of child support obligations.

The creation of this new exception requires resolution of a public policy issue: the priority of the claim of a creditor for child support over the rights of a family to keep its living place inviolate from creditors' claims. There is arguable merit to either side of the issue, but it is an issue that should be resolved by the democratic process and with the illumination of legislative debate.

The trial court followed the prudent and proper course in this matter, and I would affirm its decision.