IN THE SUPREME COURT OF THE STATE OF NEVADA

SEVERN P. BIZZARO, AN
INDIVIDUAL; GEORGE E. DOTY, AN
INDIVIDUAL; AND STEVEN P.
SIMMONS, AN INDIVIDUAL,
Appellants,
vs.
HALF DENTAL FRANCHISE, LLC, A
NEVADA LIMITED LIABILITY
COMPANY; HDM, LLC, A NEVADA
LIMITED LIABILITY COMPANY;
CHAYSE MYERS, AN INDIVIDUAL;
AND MATT BAKER, AN INDIVIDUAL,
Respondents.

No. 72522



FILED

JUL 2 6 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

## *ORDER OF REVERSAL AND REMAND*

This is an appeal from a district court summary judgment and postjudgment award of attorney fees and costs. Eighth Judicial District Court, Clark County; Ronald J. Israel, Judge.

*Facts*

Respondents obtained an arbitration award against Brandon D'Haenens for his breach of fiduciary duties and fraudulent conduct related to business dealings with respondent Half Dental Franchise.[1] After the decision and award was signed, and after D'Haenens and appellant Severn Bizzaro recorded a declaration of homestead for property located in Las

---

[1]D'Haenens is not a named appellant; he filed a Chapter 7 bankruptcy petition during the pendency of the matter.

18-28842

Vegas (the property),[2] D'Haenens and Bizzaro executed a quitclaim deed of the property to appellant George Doty in consideration of $10. Doty executed a declaration of homestead for the property. The day after respondents filed a complaint in district court against D'Haenens, Bizzaro, and Doty alleging a fraudulent transfer of the property, Doty executed a quitclaim deed of the property to appellant Stephen Simmons in consideration of $10. Simmons also executed a declaration of homestead for the property. A "Reconveyance Deed" was eventually recorded, wherein the property was transferred back to D'Haenens and Bizzaro.

The complaint alleged a fraudulent transfer pursuant to NRS 112.180 and NRS 112.190 (Nevada's Uniform Fraudulent Transfer Act) and asked for declaratory judgment to the same effect.[3] Respondents moved for summary judgment, alleging that they had established the existence of certain indicia or badges of fraud and that appellants had failed to present rebuttal evidence that the transfers were not made to defraud respondent creditors. Appellants opposed the motion for summary judgment, arguing that the property was protected by Nevada homestead law and that the transfer of exempt equity, such as the property, was not fraudulent as a matter of law.

At the initial hearing on the motion, the district court allowed appellants a continuance in order to submit evidence regarding the validity

---

[2]A declaration of homestead executed by D'Haenens and Bizzaro was recorded for the property in 2007; in early June 2015, another declaration of homestead for the property was filed, executed solely by D'Haenens.

[3]Additionally, respondents asked for fees, costs, and exemplary and punitive damages. Given our resolution of this matter, we do not reach appellants' claim that the district court erred by finding that the asserted defenses were frivolous so as to warrant a fee award.

of the homestead exemption. Appellants filed a declaration by D'Haenens, wherein he declared that he had been continuously residing at the property and submitted documents (credit card statements, bank statements, 1099 forms, etc.) from 2015 and 2016 that contained D'Haenens name and the property's address. Appellants also submitted a declaration of a neighbor of the property who averred that he had seen D'Haenens an average of three to four times per week and that D'Haenens had been living at the property on a regular basis since at least 2009.

The district court subsequently entered an order granting respondents' motion for summary judgment. In the order, the district court found that D'Haenens retained possession of the property, despite the quitclaim deeds and recorded homestead declarations by Doty and Simmons. The district court further found that the homestead exemption did not apply because the exemption was not absolute, could not be used as an instrument of fraud, and was not applicable where the exemption's purpose of protecting the family was not being served. Moreover, the district court found that appellants wasted and abandoned the property in a way that was inconsistent with the purpose of the homestead exemption, thus making the exemption unavailable to appellants. After concluding the homestead exemption did not apply, the district court concluded that appellants violated NRS 112.180 and NRS 112.190 and granted respondents' motion for summary judgment. This appeal followed.

*Discussion*

"This court reviews a district court's grant of summary judgment de novo, without deference to the findings of the lower court." *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). "Summary judgment is appropriate . . . when the pleadings and other

evidence on file demonstrate that no genuine issue as to any material fact remains and that the moving party is entitled to a judgment as a matter of law." *Id.* (internal quotation marks omitted). This court will view the evidence "in a light most favorable to the nonmoving party" when it reviews a motion for summary judgment. *Id.*

Here, the district court granted summary judgment as to respondents' two claims of fraudulent transfer under NRS 112.180 and NRS 112.190. Appellants argue that the property was subject to a valid homestead exemption and thus fraudulent-transfer law does not apply as a matter of law.

A "homestead is not subject to forced sale on execution or any final process from any court," subject to a maximum equity in the property and to exceptions that appear to be inapplicable in the instant matter. NRS 115.010(1), (2); *see also* Nev. Const. art. 4, § 30. This court has held that "[a] creditor cannot, in legal contemplation, be defrauded by the mere conveyance by his debtor of property which by law is exempt from attachment." *See Bailey v. Littell*, 24 Nev. 294, 304, 53 P. 308, 310 (1898) (internal quotation marks omitted). We explained that "[n]o prejudice or injustice can be wrought to the creditor by such transfer, for the reason that the property is beyond his reach, and his condition, rights and remedies would not be affected by the transfer." *Id.* at 303, 53 P. at 310.

This holding has been reaffirmed as recently as 2007, when this court noted it had "previously concluded that a debtor has the legal right to transfer or sell his exempt homestead property free from the liens of creditors unless otherwise provided by statute." *In re Contrevo*, 123 Nev. 20, 24, 153 P.3d 652, 655 (2007). The concept that exempt property cannot be subjected to a claim of fraudulent transfer is also supported by the plain

language of NRS Chapter 112, which defines "transfer" as any mode of "disposing of or parting *with an asset* or *an interest in an asset*," NRS 112.150(12) (emphasis added), and "asset" as property of a debtor, *but not including* "[p]roperty to the extent it is *generally exempt under nonbankruptcy law*," NRS 112.150(2) (emphasis added). Therefore, exempt property is not an asset for purposes of fraudulent-transfer law, and a debtor cannot fraudulently transfer property subject to a valid exemption, such as the homestead exemption.

The district court found that the homestead exemption was unavailable to appellants. The district court correctly noted that we have recognized exceptions to the exemption. *See Maki v. Chong*, 119 Nev. 390, 394, 75 P.3d 376, 379 (2003) (holding a homestead that was acquired with fraudulently obtained funds was not protected by the exemption); *Breedlove v. Breedlove*, 100 Nev. 606, 608-09, 691 P.2d 426, 427-28 (1984) (concluding the homestead exemption did not apply to a parent who owed child support arrears). However, neither exception has been shown to apply to the instant matter—there was no allegation that D'Haenens utilized fraudulently obtained funds to purchase the homestead or that he is in arrears for statutorily-mandated financial obligations to a dependent. The district court also relied upon *Coppler & Mannick, P.C. v. Wakeland*, 117 P.3d 914 (N.M. 2005), to find that the exemption was unavailable to shield appellants' fraudulent and malicious conduct. But *Coppler* involved a creditor who had an interest in the property, *see id.* at 918 ("[Debtor] caused significant damage to the property for the sole purpose of sabotaging the [creditors'] lawful interests."), and it is not clear from the record that respondents had a legal interest in the property. Lastly, the district court, relying upon out-of-state caselaw to find that there was nothing left to

 

which the exemption could attach after the voluntary conveyance and the transfer of title, found that the homestead exemption should not apply because of abandonment. However, the cases relied upon by the district court address claims in the homestead exemption *after* the transfer of the property, not *at the point of the transfer*, the action which is the subject of respondents' complaint.[4]

The question remains whether there was a genuine issue as to any material fact regarding appellants' claim that a valid homestead exemption existed for the property. "To secure the benefits of the constitutional and statutory provisions exempting the homestead from forced sale under process of law . . . , it is necessary that a declaration of homestead be filed for record." *McGill v. Lewis*, 61 Nev. 28, 38, 116 P.2d 581, 582-83 (1941). In the declaration, a person must declare, in writing, an intention to claim and use the property as a homestead. NRS 115.020(1)-(2). "In Nevada, it is axiomatic there can not be a homestead absent residence, [and] when a declaration of homestead is filed the declarant must be residing on the premises with the intent to use and claim the property as a homestead." *In re Nilsson*, 129 Nev. 946, 952, 315 P.3d 966, 970 (2013) (internal quotation marks omitted). "[W]hile the statutory provisions relating to homesteads should be liberally construed, this liberal interpretation can be applied only where there is a substantial compliance

---

[4]To the extent the district court concluded that D'Haenens abandoned the exemption by transferring it to Doty, this logic must fail. The mere transfer of exempt property cannot by itself constitute abandonment such that the transfer becomes subject to a fraudulent transfer claim; this logic would foreclose application of the general rule that the transfer of exempt property cannot constitute a fraudulent transfer.

with the homestead provisions." *Id.* at 949, 315 P.3d at 968 (internal quotation marks omitted),

Here, a declaration of homestead, executed by D'Haenens, was recorded on June 2, 2015, three weeks before the quitclaim deed to Doty was recorded. D'Haenens presented 1099 forms, bank statements, and credit card statements, all addressed to him at the property, thus indicating he was residing at the property. D'Haenens also declared that he had continuously resided at the property. Appellants presented a declaration from a neighbor of the property. The neighbor declared that he saw D'Haenens on average three to four times per week and that, to the neighbor's personal knowledge, the property was D'Haenens' permanent residence and had been since at least 2009. While the district court stated in its order granting summary judgment that it did not credit any assertions that were inconsistent with the quitclaim deed, the declarations and documents present a genuine issue of material fact as to whether a valid homestead exemption existed for the property.

The district court's conclusion that appellants' inconsistent positions as to the reasons for the transfers did not create any genuine issue of material fact appears to focus on the circumstances as a whole and not on the action alleged in the complaint: the transfer of property by a debtor with the intent to hinder, delay, or defraud a creditor. If a valid homestead exemption existed at the time D'Haenens and Bizzaro transferred the property to Doty, thus precluding a claim of fraudulent transfer as explained above, any subsequent action by Doty and Simmons appears to be free from any claim from D'Haenens creditors. Or, put another way,

> [i]n most jurisdictions, where the question has arisen, the exempt character of homestead property

*existing at the time of sale* thereof runs with the transfer and, so far as the rights of the purchaser are concerned, no claim or judgment can be asserted against it which could not be enforced during the time the debtor occupied it as a residence. The rule has even been extended to transfers by the homesteader for a nominal consideration or upon no consideration whatever.

*Campbell v. Largilliere Co., Bankers*, 256 P. 371, 372 (Idaho 1927) (emphasis added); *see also Majors v. Killian*, 162 So. 289, 292 (Ala. 1935) ("If it be a fact that the land in question was, *at the time of its conveyance*, the homestead of the grantors, . . . it is secure to the grantee from [a suit to set aside the voluntary conveyance as fraud on creditors]." (Emphasis added)). Thus, it appears that the validity of the homestead exemption at the time the property was transferred to Doty is the relevant question, and the district court's reliance upon circumstances after the initial transfer was misplaced with regard to the fraudulent-transfer claims.

Because appellants presented sufficient evidence to demonstrate a genuine issue of material fact as to whether a valid homestead exemption existed at the time the property was transferred to Doty, we

ORDER the judgment of the district court REVERSED AND REMAND this matter to the district court for proceedings consistent with this order.

_____, J.
Cherry

_____, J.
Parraguirre

_____, J.
Stiglich

SUPREME COURT
OF
NEVADA

(O) 1947A

cc:   Hon. Ronald J. Israel, District Judge
John Walter Boyer, Settlement Judge
Albright Stoddard Warnick & Albright
Snell & Wilmer, LLP/Las Vegas
Eighth District Court Clerk