139 Nev., Advance Opinion 49

IN THE COURT OF APPEALS OF THE STATE OF NEVADA

| | |
|---|---|
| GAIL HOLLAND, AN INDIVIDUAL, Appellant, vs. ANTHONY L. BARNEY, LTD., Respondent. | No. 84908-COA **FILED** NOV 22 2023 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY _____ CHIEF DEPUTY CLERK |

Appeal from a district court order granting summary judgment in a fraudulent transfer action. Eighth Judicial District Court, Clark County; Crystal Eller, Judge.

*Reversed and remanded.*

Hutchison & Steffen, PLLC, and Robert E. Werbicky, Las Vegas; Mincin Law, PLLC, and David Mincin, Las Vegas, for Appellant.

Jerimy Kirschner & Associates, PLLC, and Jerimy L. Kirschner, Las Vegas, for Respondent.

---

BEFORE THE COURT OF APPEALS, GIBBONS, C.J., and BULLA and WESTBROOK, JJ.

## OPINION

By the Court, BULLA, J.:

This case has a lengthy and complex procedural history involving multiple court orders and raises issues of Nevada law requiring clarification as to the preclusive effect of those orders and the equitable remedies available thereunder. We take this opportunity to provide

23-37983

guidance regarding these issues as they pertain to the centerpiece of this appeal—the ownership of real property located at 10512 Loma Portal Avenue, on which the bankruptcy court placed an equitable lien.

We conclude that an equitable lien placed on property to satisfy a debt—while not vesting the lienholder with an interest in the property—permits the lienholder to enforce the value of the equitable lien against the debtor's property even where that property has been subsequently transferred to a nondebtor spouse during divorce proceedings. In resolving this appeal, we take the opportunity to address certain nuances of claim preclusion. Here, based on the preclusive effect of prior court orders, we conclude that an equitable lien is the only remedy available to satisfy respondent's interest concerning the Loma Portal property. Thus, the district court erred in granting summary judgment by substituting other remedies in place of the equitable lien. Further, because genuine disputes of material fact remain as to the current value of the equitable lien placed on the Loma Portal property, as well as the value of the property itself, we reverse and remand for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

The Howard Family Trust (Howard Trust) was created in 1998. Appellant Gail Holland's former spouse, Gloyd Green, became the successor trustee of the Howard Trust following the death of the last remaining settlor of the trust in 2005. Thereafter, Green began misappropriating trust assets, leading to litigation with the Howard Trust and its beneficiaries (collectively referred to as the Howard Trust parties).

*Prior district court actions*

In 2008, beneficiaries of the Howard Trust—Oscar Brannon Howard III (Howard) and Truman Holt (Holt)—became suspicious of Green's handling of the Howard Trust and commenced an action in the

probate court in the Eighth Judicial District to determine whether Green had breached his fiduciary duties under the trust. Holland was not a party in the probate action. The probate court ordered Green to provide an inventory of the Howard Trust properties and a full accounting of trust assets. When Green failed to do so, the probate court removed Green as trustee and appointed Holt as the successor trustee in April 2008.

Several years later, in January 2012, Holland and Green purchased the Loma Portal property via grant, bargain, and sale deed held by the Holland-Green Family Trust (the HG Family Trust), of which they were the sole beneficiaries. In August 2012, the Howard Trust parties filed a civil suit in the Eighth Judicial District against Holland, Green, and the HG Family Trust, attempting to recover Howard Trust assets. Holt, in his capacity as trustee, also recorded a notice of lis pendens against the Loma Portal property. While this civil litigation was ongoing, the probate court enforced a forfeiture clause in the Howard Trust against Green and required him to "forfeit any and all beneficial interests" to which he might have been entitled under the Howard Trust. Further, the court ordered Green to return "any and all current property of the [Howard Trust] previously taken by [Green] from the Trust."[1]

Eventually, the district court in the civil action found that Green embezzled funds from the Howard Trust and announced from the bench its intention to enter judgment for $1,276,854.14 against Green, which included $638,427.07 in compensatory damages traced from the

_____

[1]We note that, contrary to respondent Anthony L. Barney, Ltd.'s (Barney Ltd.) assertions, the Loma Portal property was never determined to be a property held by the Howard Trust and therefore was not a property "taken" by Green from the trust.

Howard Trust and an equal amount of punitive damages. But before this oral ruling was reduced to a written judgment, Holland and Green filed a petition under Chapter 11 of the Bankruptcy Code, and the action was removed to the United States Bankruptcy Court for the District of Nevada.

*The bankruptcy proceedings*

Following removal, the civil case against Holland and Green, previously pending in district court, continued as an adversary proceeding alongside the bankruptcy proceedings in the bankruptcy court. Upon motion from the Howard Trust parties, the bankruptcy court concluded that Holland and Green's Chapter 11 petition was made in bad faith to delay entry of judgment in the underlying state case and converted their case to a proceeding under Chapter 7.[2]

*The Loma Portal property settlement*

During the bankruptcy proceedings, Holland and Green attempted to declare a homestead exemption for the Loma Portal property under NRS 21.090. However, the bankruptcy court denied Holland and Green's request for a homestead exemption after receiving evidence that the funds used to purchase the Loma Portal property were misappropriated by Green from the Howard Trust.[3]

Holland and Green thereafter participated in settlement negotiations with the bankruptcy estate trustee, with the goal of purchasing the bankruptcy estate's interest in the Loma Portal property (and thereby

---

[2]The bankruptcy filings later acknowledged that the Howard Trust's claim comprised 99.04 percent of the liabilities owed by the bankruptcy estate.

[3]Holland and Green appealed the denial of the homestead exemption to the United States Court of Appeals for the Ninth Circuit, which ultimately affirmed the underlying decision.

continuing to use the property as their primary residence). As relevant here, the bankruptcy court approved the settlement and allowed Holland and Green to purchase the bankruptcy estate's interest in the Loma Portal property for $340,000 using untainted funds. In its order approving the settlement agreement, the bankruptcy court noted that the Howard Trust parties received notice of the settlement agreement "as required by law."[4]

Importantly, the order approving the settlement noted that the bankruptcy estate's interest in the Loma Portal property was subject to any existing liens and encumbrances:

> **IT IS FURTHER ORDERED** that the [bankruptcy estate trustee] is authorized to release and transfer the estate's interest, *if any*, in the real property located at 10512 Loma Portal Avenue, Las Vegas, NV 89166 (the "Loma Property") also designated as Clark County Assessor Parcel Number 126-24-113-016, "as is, where is," and *subject to any liens and encumbrances*, to [Green and Holland] in exchange for payment of $340,000 due no later than September 22, 2017.[5]

---

[4]We note that attorney Anthony L. Barney represented Howard in the bankruptcy proceedings and approved the settlement agreement on behalf of his client.

[5]Under 11 U.S.C. § 541(a), the bankruptcy estate obtained all legal or equitable interests of the debtor's separate property and all interests of the debtor and the debtor's spouse in community property. Accordingly, to the extent that the Loma Portal property was not subject to any prior liens or encumbrances, the bankruptcy estate obtained all of Holland and Green's legal and equitable interests in the Loma Portal property.

(Emphases added.) At the time of the purchase of the Loma Portal property with the untainted funds as permitted by the settlement agreement there was no evidence of any prior liens or encumbrances on the property.[6]

The order approving the settlement also expressly reserved rights held by the Howard Trust, its trustee, or its beneficiaries against the property:

> **IT IS FURTHER ORDERED** that all rights held or claimed by the [Howard Trust] and/or its trustee or beneficiaries against the Loma Property, including those asserted in [the proceedings] pending herein, are expressly reserved notwithstanding approval of this settlement agreement.

Holland and Green thereafter timely paid $340,000 to the bankruptcy estate to purchase the Loma Portal property.[7] Pursuant to the terms of the settlement agreement, the bankruptcy trustee's final report designated the Loma Portal property as community property and Holland and Green's primary residence.

*The adversary proceedings and bankruptcy judgment*

At trial on the adversary proceedings related to the Howard Trust parties' claims against Holland and Green, the parties litigated various federal claims under 11 U.S.C. § 523 and several state causes of

---

[6]We note that the lis pendens recorded by Holt on behalf of the Howard Trust parties is not a lien but only notice of a legal dispute concerning the property. *See* 51 Am. Jur. 2d *Lis Pendens* § 2 (2010) (explaining that a lis pendens serves to alert third parties to the fact of an existing suit on property).

[7]A copy of a check for $377,553.71 was provided in the record, indicating that Holland and Green tendered payment of $340,000, plus additional funds, to the bankruptcy trustee.

action, including (1) intentional misrepresentation, (2) fraud, (3) breach of fiduciary duty, (4) conversion, (5) constructive fraud, (6) unjust enrichment, (7) embezzlement, (8) civil theft, (9) breach of constructive trust, and (10) unfair and deceptive trade practices.

Following a three-day trial, the bankruptcy court dismissed "each and all" of the Howard Trust parties' claims against Hoiland. The bankruptcy court also dismissed the Howard Trust's parties' claims against Green for larceny under 11 U.S.C. § 523(a)(4), as well as the state law claims for embezzlement, civil theft, breach of constructive trust, and unfair and deceptive trade practices. Nevertheless, the bankruptcy court determined that the remaining claims against Green, including breach of fiduciary duty, intentional misrepresentation, and fraud, had merit and entered judgment in favor of the Howard Trust parties and against Green in the amount of $1,570,145.36, inclusive of compensatory damages, punitive damages, and prejudgment interest.

The bankruptcy court also made findings related to the Loma Portal property in its judgment, determining that "it is easily more likely than not under the preponderance of the evidence standard, that 100 percent of the funds used to [initially] purchase the Loma Portal property were assets of the Howard Trust." However, the bankruptcy court declined to grant the Howard Trust parties' request for a constructive trust on the property and ultimately dismissed the constructive trust claim in favor of awarding an equitable lien. In doing so, the bankruptcy court found that "the allegations in the amended complaint failed to set forth sufficient factual allegations to constitute a demand for imposition of a constructive trust, and even if this claim was adequately pleaded, and the Court finds that it is not, plaintiffs are not entitled to the remedy they seek." The

bankruptcy court also found that the repurchase of the Loma Portal property by Holland and Green with untainted funds through the settlement agreement constituted "a partial, if not complete restitution of the Howard Trust funds that [Green] used to acquire the [Loma Portal] property when he paid $340,000 to the Chapter 7 trustee." Further, because the settlement agreement effectively repaid the funds misappropriated by Green, the bankruptcy court found that "money damages will make [the Howard Trust parties] whole" and, therefore, "a constructive trust is not essential to the effectuation of justice."

Accordingly, the court instead imposed an equitable lien on Green's interest in the Loma Portal property:

> **JUDGMENT IS FURTHER ENTERED** in favor of [the Howard Trust parties] and against [Green], and an equitable lien is imposed under Nevada state law upon *his interest* in the Loma Portal property referenced in the Court's September 20, 2018, oral ruling. *That lien shall be reduced dollar for dollar by any funds [the Howard Trust parties] receive from the Chapter 7 trustee in the bankruptcy case* filed jointly by [Holland and Green], as a result of the $340,000.00 settlement payment made by [Holland and Green] to purchase the estate's interest in the Loma Portal property.

(Emphases added.) We clarify that in its oral ruling, the court determined that the amount of the equitable lien would be equal to $340,000, which was the purchase price of the Loma Portal property under the settlement agreement.[8]

---

[8]During the September 20, 2018, hearing the bankruptcy court clarified that the Howard Trust parties "seek an equitable lien on the Loma—Loma Portal property for its full value. [They] do not state what that value purports to be, and given Green's recent purchase of the

*The bankruptcy trustee's final accounting*

Following conclusion of the adversary proceedings, the bankruptcy trustee submitted—and the bankruptcy court approved—the trustee's final report, which confirmed that the bankruptcy estate had received $340,000 in funds from Holland and Green to purchase the estate's interest in the Loma Portal property and that the Howard Trust received $377,553.71 as its pro-rata share of the bankruptcy estate. The bankruptcy court approved the final accounting without revision and entered judgment accordingly. The Howard Trust parties did not appeal from either the order approving the repurchase of the Loma Portal property or the final judgment.

*The divorce proceedings*

After receiving her bankruptcy discharge in April 2019, Holland filed a complaint for divorce and alleged marital waste of community property by Green. Green defaulted, and the district court entered a divorce decree granting Holland sole ownership of the Loma Portal property to account for marital waste by Green. In addition, the divorce decree provided that all necessary action could be taken to ensure the transfer of the property to Holland, including execution of a quitclaim deed, and noted that if the parties could not accomplish this on their own, the clerk of the court would be authorized to prepare the documents to effectuate the transfer.

Later, Holland, as a trustee of the HG Family Trust, recorded a quitclaim deed transferring any interest the trust had in the Loma Portal

---

[bankruptcy] estate's interest in that property for $340,000, the Court finds that this is the value [they] are referring to."

Court of Appeals
of
Nevada

(O) 1947B

property to herself as an individual, in accordance with the divorce decree.[9] The existence of the equitable lien placed by the bankruptcy court on Green's interest in the Loma Portal property, was not addressed in the divorce decree.

*The underlying district court action*

Subsequently, Howard (through his estate) assigned his interest and right to recovery of the judgment entered by the bankruptcy court to Barney Ltd., and during subsequent litigation in state probate court, the district court determined that Holt had withdrawn from the litigation and that Barney Ltd. was "the only remaining real party in interest with legal standing to pursue collection" under the bankruptcy judgment. In April 2021, Barney Ltd. initiated a suit in the Eighth Judicial District Court against Holland and Green alleging four claims for relief: quiet title, fraudulent transfer, constructive trust, and conversion. Holland filed an answer to the complaint, but Barney Ltd. was unable to serve Green with the complaint.[10]

Barney Ltd. filed a motion for summary judgment on all four claims, primarily arguing that the bankruptcy judgment established an equitable lien on the Loma Portal property in the amount of $1,276,854.14—the entirety of the remaining bankruptcy judgment after receipt of the bankruptcy distribution. Related to the alleged fraudulent transfer, Barney Ltd. argued that the divorce proceeding did not give Green the right to

---

[9]During oral argument, Holland's counsel indicated that the Loma Portal property had been repurchased by Holland and Green individually and held as community property.

[10]Green's current whereabouts are apparently unknown, and he was later voluntarily dismissed from this action by stipulation of the parties.

convey title to the Loma Portal property to Holland and maintained that the quitclaim deed from Holland as a trustee of the HG Trust to Holland personally was void. And because this fraudulent transfer voided the transaction, Barney Ltd. argued that the district court should quiet title in his favor and impose a constructive trust on the property.

Holland opposed the motion and filed a countermotion for summary judgment. Holland primarily argued that res judicata applied, given that the bankruptcy court had dismissed all claims against her with prejudice, including claims related to conversion and a constructive trust against the Loma Portal property.[11] In addition, Holland argued that while the bankruptcy court placed an equitable lien on the Loma Portal property, that lien only applied to Green's community interest in the property (approximately $211,120), which had already been satisfied by the $340,000 settlement payment. Holland further contended that the $340,000 amount comprised the majority of the total $377,553.71 disbursement received by the Howard Trust parties in the bankruptcy discharge. Holland also asserted that the claim for fraudulent transfer failed as a matter of law because Barney Ltd. could not show that Green fraudulently transferred his interest to Holland.

In supplemental briefs requested by the district court, Barney Ltd. contended that—irrespective of any payments already made—the Loma Portal property continued to be encumbered by the amount of the judgment against Green. Barney Ltd. argued that the equitable lien ran

_____

[11]We reiterate that the Howard Trust parties' state law claims for intentional misrepresentation, fraud, breach of fiduciary duty, conversion, constructive fraud, unjust enrichment, embezzlement, civil theft, breach of constructive trust, and unfair and deceptive trade practices against Holland were dismissed in the bankruptcy action.

with the property and that neither the divorce decree nor the subsequent transfer could eliminate this obligation without complete payment of the entire judgment. Holland countered these arguments, highlighting the specific language in the bankruptcy judgment indicating that the equitable lien, if it survived, would apply only to Green's interest in the Loma Portal property.

Following a hearing, the district court entered summary judgment against Holland, granted Barney Ltd. a constructive trust on the Loma Portal property, and quieted title to the property in Barney Ltd.'s favor. In its order, the court found that res judicata[12] applied to the 2012 probate court order (which directed Green to return any and all property of the Howard Trust to the trustees) and concluded that the Loma Portal property should have been surrendered to the Howard Trust during the probate action when the court instructed Green to return all property he had taken from the Trust, past or present. The district court also appeared to recognize that res judicata played a role in the bankruptcy court proceedings.

Consequently, the district court ruled that because Green had initially purchased the Loma Portal property entirely with stolen funds, he acquired the property illegally. Therefore, the court decided any held title was legally void—including the transfer of the property to Holland individually—leaving nothing for subsequent conveyance and supporting summary judgment in Barney Ltd.'s favor on its quiet title, fraudulent transfer, and conversion claims. The district court quieted title in Barney

_____

[12]We note that the modern trend is to refer to res judicata as claim and issue preclusion. *See Five Star Capital Corp. v. Ruby*, 124 Nev. 1048, 1051, 194 P.3d 709, 711 (2008).

Ltd.'s name and imposed a constructive trust on the property, finding that Holland's actions amounted to acts of conversion against Barney Ltd. On March 24, 2022, one day after entry of the summary judgment order, Barney Ltd. recorded the order despite the 30-day automatic stay on the execution of judgments pursuant to NRCP 62 as revised in 2019. On May 2, Barney Ltd. initiated eviction proceedings against Holland. On June 21, the district court denied Holland's motion for relief from judgment, and this court ultimately granted a stay of the proceedings below pending this appeal.[13]

## ANALYSIS

On appeal, Holland asks this court to reverse and remand the district court's grant of summary judgment, arguing that the district court erred when it awarded a constructive trust and quieted title in Barney Ltd.'s favor.[14] Holland primarily contends that the district court erred in failing to properly consider the preclusive effect of the prior orders and judgments in bankruptcy court and family court. And although Holland recognizes that the bankruptcy court imposed an equitable lien on the property, she contends that genuine disputes of material fact remain as to the amount of that lien in relation to the value of the Loma Portal property. Barney Ltd. contends that summary judgment was warranted, as the district court appropriately considered the prior judgments from the earlier litigation,

---

[13]In light of this opinion, we lift this court's June 29, 2022, Order Granting Stay.

[14]Holland also argues that the district court abused its discretion in resolving her motion for stay and her post-judgment motion seeking relief from its order granting summary judgment and contends that Barney Ltd. violated NRCP 62 by taking actions to enforce the judgment of the district court before the judgment became final. We need not address these issues in light of our holding in this opinion.

and that a constructive trust is an appropriate equitable remedy to redress Green's (and by extension Holland's) misdeeds against the Howard Trust.

A district court's decision to grant summary judgment is reviewed de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Before a district court may grant summary judgment, the moving party must "show[ ] that there is no genuine dispute as to any material fact." NRCP 56(a); *see also Wood*, 121 Nev. at 729, 121 P.3d at 1029 ("Summary judgment is appropriate . . . when the pleadings and other evidence on file demonstrate that no genuine [dispute] of material fact [remains] and that the moving party is entitled to judgment as a matter of law." (alteration in original, internal quotation marks omitted)). All evidence must be viewed in a light most favorable to the nonmoving party. *Wood*, 121 Nev. at 729, 121 P.3d at 1029. To withstand summary judgment, the nonmoving party cannot rely solely on general allegations and conclusions set forth in the pleadings but must instead present specific facts demonstrating the existence of a genuine factual dispute supporting their claims. NRCP 56(e); *see also Wood*, 121 Nev. at 731, 121 P.3d at 1030-31.

For foundational purposes, we first discuss Nevada's jurisprudence regarding constructive trusts and equitable liens placed on real property to secure a debt. Next, because our resolution of this appeal ultimately rests on the preclusive effects of prior court orders, we provide guidance on that subject. Finally, we address genuine disputes of material fact that prevent the granting of summary judgment.

*Nevada recognizes both equitable liens and constructive trusts to address unjust enrichment*

Equitable remedies, such as equitable liens and constructive trusts, are available to a plaintiff when "legal remedies, such as statutory review, are not available or are inadequate." *State, Dep't of Health &*

COURT OF APPEALS
OF
NEVADA

(O) 1947B

14

*Human Servs. v. Samantha Inc.*, 133 Nev. 809, 812, 407 P.3d 327, 329 (2017) (quoting Richard J. Pierce Jr., *Administrative Law Treatise*, 1701 (5th ed. 2010)). The Nevada Supreme Court previously approved the use of the Restatement (First) of Restitution (1937) in *Namow Corp. v. Egger*, 99 Nev. 590, 592, 668 P.2d 265, 267 (1983),[15] and recognized both equitable liens and constructive trusts as remedies to restore property belonging to another.

An equitable lien can be a proper remedy to reimburse a creditor whose money was stolen and used to purchase real property. *See Maki v. Chong*, 119 Nev. 390, 393-94, 75 P.3d 376, 379 (2003). While a lien is a security interest in property, it does not confer a title interest or ownership. *Nev. Ass'n Servs., Inc. v. Eighth Judicial Dist. Court*, 130 Nev. 949, 958, 338 P.3d 1250, 1256 (2014). The lienholder does not obtain the right to control or dispose of the property, and these rights remain with the property owner until foreclosure proceedings are undertaken. *Id.*

A constructive trust is also a remedy to restore stolen funds used to purchase property. *See Namow*, 99 Nev. at 592, 668 P.2d at 267; *see also* Restatement (First) of Restitution § 160 (1937). However, a constructive trust is a remedial device "by which the holder of legal title to property is deemed to be a trustee of that property for the benefit of another who in good conscience is entitled to it." *Namow*, 99 Nev. at 592, 668 P.2d at 267.

---

[15]We recognize that there have been subsequent editions of the Restatement of Restitution, but the edition adopted in *Namow* continues to provide a workable framework for resolving the application of equitable remedies.

In this instance, a constructive trust and an equitable lien were alternative equitable remedies available to the Howard Trust parties (and by extension, Barney Ltd.) to redress the misappropriation of trust funds by Green. *See id.* But where, as here, two alternative equitable remedies exist, a plaintiff may have the "option of seeking to enforce one or the other, based upon whichever result will maximize [their] recovery." 51 Am. Jur. 2d *Liens* § 30 (2023). No matter which option a plaintiff decides to pursue, however, the availability of a particular equitable remedy is not absolute and is generally left to the discretion of the trial court. *See Am. Sterling Bank v. Johnny Mgmt. LV, Inc.*, 126 Nev. 423, 428, 245 P.3d 535, 538 (2010) (stating that "district courts have full discretion to fashion and grant equitable remedies").

Here, the decision of whether to impose a constructive trust or equitable lien was made by the bankruptcy court, which expressly rejected the Howard Trust parties' request for a constructive trust in favor of awarding an equitable lien. As discussed below, the bankruptcy court's determination that an equitable lien was the appropriate remedy has preclusive effect upon the parties and in subsequent legal proceedings.

*Claim preclusion applies to the prior bankruptcy orders in this matter*

A district court's decision as to claim preclusion is reviewed de novo. *Alcantara v. Wal-Mart Stores, Inc.*, 130 Nev. 252, 256, 321 P.3d 912, 914 (2014). Central to this appeal is whether the bankruptcy judgment precludes certain claims and issues raised by the parties. The doctrine of claim preclusion serves "vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case," and "[t]here is simply 'no principle of law or equity which sanctions the rejection by a . . . court of the salutary principle of res judicata.'" *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401 (1981) (quoting *Heiser v. Woodruff*, 327 U.S.

726, 733 (1946)). Because claim preclusion applies equally to actions at law or in equity, see 50 C.J.S. *Judgments* § 926, we hold that the orders of the bankruptcy court related to the Loma Portal property had preclusive effect in the subsequent district court actions.

Claim preclusion aims to achieve finality by preventing another lawsuit based on the same facts as in an initial suit. *Five Star Capital Corp. v. Ruby*, 124 Nev. 1048, 1054, 194 P.3d 709, 712 (2008). It applies when "(1) the parties or their privies are the same, (2) the final judgment is valid, and (3) the subsequent action is based on the same claims or any part of them that were or could have been brought in the first case." *Id.* at 1054, 194 P.3d at 713 (internal footnote omitted). Claim preclusion "treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same claim." 50 C.J.S. *Judgments* § 973.

We initially address the first two requirements of *Five Star*. In this case, the parties stand in privity. Privity exists when a person has "acquired an interest in the subject matter affected by the judgment through . . . one of the parties, as by inheritance, succession, or purchase." *Mendenhall v. Tassinari*, 133 Nev. 614, 618, 403 P.3d 364, 369 (2017) (omission in original) (internal quotation marks omitted). Here, Barney Ltd., as assignee of its client's interest in the bankruptcy judgment, steps into the shoes of the Howard Trust and its beneficiaries and—based on privity—is entitled to collect on the judgment only to the extent that the Howard Trust and its beneficiaries would be entitled to do so. Thus, Barney Ltd. and the Howard Trust parties are identical for the purpose of claim preclusion. And because Holland was also a party to the bankruptcy proceedings and the subsequent litigation, the first requirement is satisfied.

Next, the parties are bound by matters decided after a competent court has entered a final judgment on the merits. *Russell v. Comm'r*, 678 F.2d 782, 786 (9th Cir. 1982). Therefore, the bankruptcy judgment was final and, thus, binding on the parties in the appeal before us.[16]

Having concluded that the first two elements of *Five Star* have been satisfied, we now consider the third element, whether the claims brought in the district court action were based on "the same claims or any part of them that were or could have been brought" in the bankruptcy action, thereby addressing the parties' arguments regarding the preclusive effect as applied to those claims and issues in the district court's order granting Barney Ltd.'s motion for summary judgment.

*The district court erred when it granted summary judgment on Barney Ltd.'s claims for constructive trust, quiet title, fraudulent transfer, and conversion*

On appeal, Holland argues that Barney Ltd.'s causes of action for constructive trust, quiet title, fraudulent transfer, and conversion are barred by claim preclusion and asks this court to reverse the district court's order granting summary judgment on those claims. Barney Ltd. responds that its claims are not restrained by the judgment in the bankruptcy court, as they arise not from the initial purchase of the property by Holland and Green but rather from Holland's subsequent transfer of the property following the decree of divorce.

---

[16]We note, however, that to the extent the district court relied upon the probate court's 2008 order to apply claim preclusion against Holland, this was in error, as the 2008 judgment was not a final judgment on the issue, and Holland was not a party to *that* dispute.

*Constructive trust*

Barney Ltd. requested that the district court place a constructive trust on the Loma Portal property to satisfy Green's debt because he initially purchased the property with funds stolen from the Howard Trust. Applying the doctrine of claim preclusion, we conclude that Barney Ltd. is prevented from asserting the competing remedy of a constructive trust in the underlying district court action based on Green's initial misappropriation of trust funds because the bankruptcy court expressly considered and rejected that remedy and the Howard Trust parties did not appeal from that decision. *See Five Star*, 124 Nev. at 1055, 194 P.3d at 713. Accordingly, the bankruptcy court's findings on this matter are final and binding upon Barney Ltd. as the assignee of the Howard Trust parties. Therefore, we hold that the district court erred when it disregarded the findings and conclusions of the bankruptcy court by substituting its own remedy in place of the remedy already litigated and obtained by the parties. *See Federated Dep't Stores*, 452 U.S. at 401.

*Quiet title*

As explained above, claim preclusion bars claims that were *or could have been* raised in the prior action between the same parties. *See Five Star*, 124 Nev. at 1054, 194 P.3d at 713. Here, the Howard Trust parties commenced an adversarial proceeding against both Holland and Green in bankruptcy court but did not assert a cause of action for quiet title. The ownership of the Loma Portal property was unequivocally disputed in the adversarial proceedings before the bankruptcy court, where the Howard Trust and its beneficiaries attempted to lay claim to the title of the property under the remedy of a constructive trust. In conjunction with their request for a constructive trust, they also could have asserted a claim for quiet title to the property. Therefore, we conclude that claim preclusion forecloses

COURT OF APPEALS
OF
NEVADA

(O) 1947B

19

Barney Ltd. from now asserting a quiet title claim in this proceeding based on Green's conduct already considered by the bankruptcy court.

*Fraudulent transfer and conversion*

In the proceedings below, the district court granted Barney Ltd.'s motion for summary judgment on his fraudulent transfer and conversion claims. As to fraudulent transfer, Barney Ltd. alleges that Holland never obtained title to the Loma Portal property because Green purchased the Loma Portal property with funds misappropriated from the Howard Trust—rendering all subsequent transfers of that property *void ab initio* and therefore fraudulent. But, as with Barney Ltd.'s quiet title claim, the facts underlying this claim were available during the bankruptcy proceedings.

At the time of the bankruptcy action, title under the grant, bargain, and sale deed was held by the HG Family Trust with two beneficiaries, Holland and Green. Thus, both Holland and Green held a community ownership interest in the Loma Portal property when they filed for bankruptcy, which allowed the bankruptcy court to exercise jurisdiction over the property. *See* 11 U.S.C. § 541(a). Moreover, Barney Ltd.'s privy—the Howard Trust parties—were present and consented to the entry of the settlement agreement adopted by the court that allowed Holland and Green to repurchase and hold title to the Loma Portal property as part of their community property estate. As the Howard Trust parties failed to assert the claim that Green's interest in the property was *void ab initio* during the prior proceedings, Barney Ltd. is also precluded from asserting this claim in the current action. *See Five Star*, 124 Nev. at 1054, 194 P.3d at 713.

Nevertheless, Barney Ltd. argues that its other grounds for its claims of fraudulent transfer and conversion are not subject to claim preclusion, as they do not result from Green's initial purchase of the

COURT OF APPEALS
OF
NEVADA

(O) 1947B

property with Howard Trust funds, but instead originate from Holland's purportedly wrongful transfer of title to the Loma Portal property from the HG Family Trust to herself as an individual following the end of the bankruptcy proceedings and as a result of the divorce proceedings. We agree.

Although these claims meet the first two elements of claim preclusion under *Five Star*, the alleged underlying fraudulent transfer and conversion of Green's share of the Loma Portal property to Holland occurred after the bankruptcy proceeding and, therefore, were not and could not have been brought during that first action. *Id.* Accordingly, we now turn to Barney Ltd.'s other arguments regarding its fraudulent transfer and conversion claims.

We need not address Barney Ltd.'s conversion claim in detail as the parties appear to concede, and we agree, that conversion applies only to personal property. Accordingly, the conversion claim against Holland fails because Barney Ltd. alleges that she converted real property belonging to the Howard Trust. Thus, to the extent that the district court relied on conversion to award Barney Ltd. the Loma Portal property, this was in error. *See, e.g.*, *Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 329, 130 P.3d 1280, 1287 (2006) ("Conversion is a distinct act of dominion wrongfully exerted over personal property.").

Turning to the fraudulent transfer claim, such a claim under the Nevada Uniform Fraudulent Transfer Act is a "claim by a creditor that a debtor transferred property with the intent to defraud the creditor by placing the property out of the creditor's reach." *Tahican, LLC v. Eighth Judicial Dist. Court*, 139 Nev., Adv. Op. 2, 523 P.3d 550, 554 (2023); *see also* NRS 112.180(1). When the creditor seeks a remedy for a fraudulent

COURT OF APPEALS
OF
NEVADA

(O) 1947B

21

transfer under NRS 112.210(1)(a), the district court may void the transfer and return the title to the debtor. *Tahican*, 139 Nev., Adv. Op. 2, 523 P.3d at 554. Alternatively, after a creditor obtains a judgment on a claim against the debtor, the court "may levy execution on the asset transferred or its proceeds." NRS 112.210(2).

*The transfer of the Loma Portal property pursuant to the divorce decree was not a fraudulent transfer*

To the extent that Barney Ltd. argues that Holland's transfer of title to the property following the divorce decree was fraudulent and voided title to the property, we disagree.[17] Generally, courts must make an equal division of community property in a divorce unless there is a compelling reason, such as marital waste, to make an exception. *Kogod v. Cioffi-Kogod*, 135 Nev. 64, 75, 439 P.3d 397, 406 (2019). Marital waste includes one spouse's deliberate misuse of community assets for unethical or illegal purposes. *Lofgren v. Lofgren*, 112 Nev. 1282, 1283, 926 P.2d 296, 297 (1996). Family courts have jurisdiction to transfer property from one spouse to another. *Cf. Guerin v. Guerin*, 116 Nev. 210, 212, 993 P.2d 1256, 1257 (2000) (affirming a district court order transferring property from one spouse to another in a divorce decree); *see also Landreth v. Malik*, 127 Nev. 175, 184, 251 P.3d 163, 169 (2011) (recognizing that "the family court division has original and exclusive jurisdiction over matters affecting the familial unit including divorce, custody, marriage contracts, community and separate property, child support, parental rights, guardianship, and adoption").

---

[17]Because neither the Howard Trust parties nor Barney Ltd. had an ownership interest in the Loma Portal property, they were not parties in the family court proceedings.

Nevada law broadly provides that a "transfer" is "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease and creation of a lien or other encumbrance." NRS 112.150(12). In this case, after finding marital waste by Green, the family court transferred the Loma Portal property from the marital community to Holland as her sole and separate property, as permitted by Nevada law. See Kogod, 135 Nev. at 75, 439 P.3d at 406 (allowing the family court to unequally dispose of assets in the event of marital waste).[18]

While the quitclaim deed from the HG Family Trust to Holland was a transfer of ownership interest, it does not necessarily follow that it was fraudulent, particularly where the transfer was authorized by the family court when it made its property distribution to Holland.[19] Indeed, the family court merely equalized the remaining community assets by awarding the Loma Portal property to Holland to compensate her for the marital waste incurred by Green. And, as discussed further below, this

---

[18]Although it is unclear from the record whether the family court was aware of the equitable lien placed on Green's share of the Loma Portal property by the bankruptcy court before transferring the property to Holland, this did not prohibit the family court from adjudicating the ownership of a marital asset.

[19]We note that in the divorce decree the family court explicitly stated that the clerk of the court could sign any necessary documents, such as quitclaim deeds, on behalf of an uncooperative party to effectuate property distribution. Thus, assuming a quitclaim deed had been required to effectuate the transfer of the Loma Portal property to Holland, the divorce decree authorized the use of a quitclaim deed for that purpose. Cf. Guerin, 116 Nev. at 212, 993 P.2d at 1257.

transfer does not qualify as a fraudulent transfer, as Barney Ltd.'s equitable lien runs with the property, and therefore Holland received title to the property subject to that lien. *See* 51 Am. Jur. 2d *Liens* § 18. Because the family court transferred the property as a valid exercise of its jurisdiction and the equitable lien remained attached to the property, we conclude that this transfer does not constitute a fraudulent transfer under NRS 112.180(1).

As established above, because Holland and Green had a valid community property interest in the Loma Portal property, the family court necessarily was able to transfer that property as a proper exercise of its jurisdiction. Thus, to the extent that the district court's order in the underlying proceeding invalidated the divorce decree by voiding the property transfer thereunder, the district court in this action exceeded its jurisdiction. *See* NRS 3.220 (providing that district judges have equal and coextensive jurisdiction and power). And it is well established that district courts lack jurisdiction "to review the acts of other district courts." *Rohlfing v. Second Judicial Dist. Court*, 106 Nev. 902, 906, 803 P.2d 659, 662 (1990). Because judges sitting in the family division have "all the constitutional powers" of a district judge, *Landreth*, 127 Nev. at 185, 251 P.3d at 170, the district court had no authority to disregard the family court's divorce decree. Accordingly, Barney Ltd.'s arguments related to its fraudulent transfer and conversion claims are unavailing.

*The district court erred when it failed to enforce the equitable lien established under the bankruptcy judgment*

In addition to the claims brought above, and as recognized by both the parties during oral argument, Barney Ltd. argued in its motion for summary judgment that the doctrine of claim preclusion prohibits Holland from contesting the existence and validity of the equitable lien placed upon

the property by the bankruptcy court. *See Five Star*, 124 Nev. at 1054, 194 P.3d at 713. For the same reasons the claims above cannot be relitigated in this new action, we conclude that the parties' interests in the Loma Portal property are subject to the equitable lien imposed by the bankruptcy court. Accordingly, we conclude that the district court erred to the extent that it failed to recognize the continued existence of the equitable lien and its enforceability.

Indeed, Holland was aware of Barney Ltd.'s equitable lien, and even if she misunderstood the effect of the lien on the property after her discharge, she was bound by the bankruptcy judgment and took title to the entire property subject to the equitable lien placed on Green's interest. *See Bank of India v. Weg & Myers, P.C.*, 691 N.Y.S.2d 439, 445 (N.Y. App. Div. 1999) ("A subsequent holder of the property takes it subject to the rights of the equitable lienor . . . including the right of restitution to the extent of the lien." (internal citation omitted)); 51 Am. Jur. 2d *Liens* § 18. Further, as a party to the prior district court and bankruptcy proceedings, Holland was aware of the lis pendens providing notice of the Howard Trust parties' purported interest in the property. *See Weddell v. H2O, Inc.*, 128 Nev. 94, 106, 271 P.3d 743, 751 (2012) ("The doctrine of lis pendens provides constructive notice to the world that a dispute involving real property is ongoing."), *abrogated on other grounds by Tahican*, 139 Nev., Adv. Op. 2, 523 P.3d 550; *see also* NRS 14.010(3) (stating that a lis pendens constitutes "constructive notice to a purchaser or encumbrancer of the property affected thereby"). Thus, Holland cannot be considered a bona fide purchaser of the property, and her interest is subject to the equitable lien. *See* Restatement (First) of Restitution § 168 cmt. b (recognizing that "where a person holds property subject to an equitable lien in favor of another and transfers it to

a person who is not a bona fide purchaser, the latter holds the property subject to the equitable lien").[20]

*Questions of fact remain regarding the remaining value of the equitable lien and the value of Green's share of the Loma Portal property to satisfy any remaining portion of the equitable lien*

Finally, genuine disputes of material fact remain, rendering summary judgment inappropriate under NRCP 56. Because the bankruptcy court unequivocally imposed an equitable lien on Green's interest in the Loma Portal property, we hold that the district court erred when it failed to recognize and adjudicate the rights and interests associated with Barney Ltd.'s equitable lien on the property.[21] Indeed, Holland conceded at oral argument before this court that genuine disputes of material fact remain as to the value of Green's share of the property that remains to satisfy the lien. We therefore reject the parties' contentions that summary judgment should be granted and, for the reasons discussed below, reverse and remand.

*The initial amount of the equitable lien*

Holland contends that the value of the equitable lien is limited to the amount of Green's interest in the property, whereas Barney Ltd. contends that the value of the equitable lien is inclusive of the remaining judgment (in excess of $1.2 million dollars). However, both parties' interpretations of the amount of the equitable lien are belied by the record.

---

[20]We reject Barney Ltd.'s argument that a lis pendens secures an ownership interest in property, as it only provides notice of legal proceedings involving the property.

[21]We reject Holland's argument that the subsequent transfer of title to the property extinguished the equitable lien.

COURT OF APPEALS
OF
NEVADA

(O) 1947B

Thus, we reject the parties' interpretations and hold that the bankruptcy court imposed an equitable lien upon Green's interest in the Loma Portal property in the amount of $340,000—the property's value based on the purchase price paid at the time of the bankruptcy settlement, as clarified by the bankruptcy court in its oral statement as to the value of the lien, relied upon in its written judgment.

*The remaining value of the equitable lien*

Finally, we conclude that a genuine dispute of material fact exists regarding the amounts paid, if any, from the bankruptcy settlement to satisfy the equitable lien. Our review of the record suggests that the Howard Trust was to receive a distribution of funds in the amount of $377,553.71 at the conclusion of the bankruptcy proceedings as approved by the bankruptcy court. What is unclear is how much of this distribution was applied toward satisfying the equitable lien that was placed on the Loma Portal property. The bankruptcy court specifically included a provision in its order that the amount of the equitable lien would be reduced "dollar for dollar" by any distribution received by the Howard Trust and its beneficiaries from the bankruptcy trustee. Thus, the bankruptcy court unquestionably anticipated that some, if not all, of the settlement proceeds received by the bankruptcy trustee from Holland and Green would satisfy the lien placed on Green's share of the property. On remand, the district court will need to make this determination in the first instance.[22]

---

[22]We also note that Barney Ltd. appears to suggest that Holland failed to raise election of remedies as an affirmative defense. However, we need not address this argument, as the election of a constructive trust was rejected by the bankruptcy court. Because claim preclusion resolves this issue, there is no further election to be made.

*The value of the Loma Portal property*

To enforce the equitable lien against Green's interest in the property, which is now held by Holland, the district court will also necessarily need to determine the current value of the Loma Portal property. The equitable lien attaches only to Green's share of the property, which in a community property state such as Nevada equals one-half of the property's value, notwithstanding that the title to the entirety of the property remains with Holland. On remand, the district court will need to determine the current value of the Loma Portal property and make the necessary calculations to determine the value of one-half of the property that is encumbered by the equitable lien. Then, the court will need to determine the remainder of the equitable lien amount that Barney Ltd. is entitled to enforce. Unless the entire repurchase price of $340,000 was accounted for in the distribution to the Howard Trust parties by the bankruptcy trustee, Barney Ltd. is entitled to enforce the remainder of the equitable lien against Green's share of the Loma Portal property.

## CONCLUSION

We conclude that the district court failed to recognize the preclusive effect of prior court orders and to properly apply the doctrine of claim preclusion when considering Barney Ltd.'s motion for summary judgment. Because the bankruptcy court placed an equitable lien on Green's interest in the Loma Portal property, Barney Ltd. is entitled to enforce any remainder of the equitable lien in accordance with Nevada law, but it is not entitled to a constructive trust, title to the property, or recovery for fraudulent transfer or conversion. And as genuine factual disputes remain as to the current value of the equitable lien and the value of the

Court of Appeals
of
Nevada

(O) 1947B

Loma Portal property, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

_____, J.
Bulla

We concur:

_____, C.J.
Gibbons

_____, J.
Westbrook

Court of Appeals
OF
Nevada

(O) 1947B